UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| AARON RAMSEY | CIVIL ACTION NO. 20-1608 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| CITY OF BOSSIER CITY, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

The instant matter involves alleged excessive force in the apprehension of a suspect and insufficient medical care following his arrest. Before the Court are five separate motions attacking the sufficiency of Plaintiff Aaron Ramsey's ("Ramsey") amended complaint.[1] They include a Motion for Partial Dismissal (Record Document 17) filed by Officer Jeremy Nelson ("Nelson"); three Motions to Dismiss (Record Documents 19, 21 & 28) filed by Chief of Police Shane McWilliams ("McWilliams"), Bossier Parish Police Jury ("the Police Jury"), and Bossier Sheriff's Office Defendants Warden Rodney Boyer ("Boyer"), Sheriff Julian Whittington ("Whittington"), and Lieutenant Jason Porter ("Porter"); and a Motion for Judgment on the Pleadings (Record Document 30) filed by the City of Bossier City ("Bossier City").

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In December 2019, Bossier City Police responded to an alarm at a local business and determined an attempted burglary had taken place. See Record Document 15 at ¶10. Soon thereafter, Nelson attempted to stop Ramsey on suspicion that he had committed the crime. See id. at ¶11. When Ramsey fled, Nelson deployed his K-9 to locate and

---

[1] Ramsey moved to amend his initial complaint following a motion to dismiss filed by one of the Defendants. See Record Document 9. Magistrate Judge Hornsby permitted amendment and denied this first motion to dismiss without prejudice. See Record Document 14. That same day, Ramsey filed his amended complaint, which serves as the focal point for the Court's forthcoming analysis. See Record Document 15.

apprehend the suspect. See id. at ¶12. The K-9 successfully subdued Ramsey using a bite-and-hold technique. See id. at ¶13. However, Ramsey alleges Nelson instructed the K-9 to continue to bite him even after he had surrendered and begun screaming in pain. See id. at ¶¶13-14. According to Ramsey, Nelson verbally encouraged the dog to continue its attack, and at one point, clamped down on its jaws to increase the pressure on Ramsey. See id. at ¶¶15-16. As a result, Ramsey suffered serious injuries to his left arm, left shoulder, and left leg. See id. at ¶20.

That evening, Ramsey was booked into the Bossier Parish Maximum Security Facility ("the Facility") and charged with burglary of a business and resisting arrest by flight. See id. at ¶17. Ramsey alleges his injuries required sutures and forced him to initially use a wheelchair and a walker. See id. at ¶57. Despite his complaints of significant pain, he was only provided Tylenol by the medical staff. See id. at ¶34. As his incarceration proceeded, Ramsey continued to seek additional treatment for his injuries but was allegedly told he could obtain the care he sought only after he was discharged from prison. See id. at ¶46. When his repeated requests for medical attention went unanswered, Ramsey sought various administrative remedies, which were ultimately denied. See id. at ¶¶48-49. He alleges Porter retaliated against him for these internal petitions by removing him from his job and offering to restore his position only if he would drop his requests. See id. at ¶¶54-55. When Ramsey refused to do so, Porter allegedly caused him to be finally terminated. See id.

## LAW AND ANALYSIS

Ramsey seeks to hold the Defendants liable pursuant to 42 U.S.C. § 1983 for violation of his Fifth, Eight, and Fourteenth Amendment rights under the U.S. Constitution

and Articles 2, 13, and 25 of the Louisiana Constitution. See id. at ¶59. In addition to the injuries on the left side of his body, which Ramsey claims still cause pain and immobility, he suffers nightmares and PTSD from the incident. See id. at ¶¶57-58.

## I.     Legal Standards

In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim [for] relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A complaint need not contain detailed factual allegations but does require more than mere labels and conclusory statements. See id. at 555. Importantly, a "formulaic recitation of the elements of a cause of action will not do." Id. When evaluating a pleading, courts must accept all factual allegations as true, but need not accept legal conclusions as facts. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Determining whether a complaint states a plausible claim for relief [is]… a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Facial plausibility is present when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citing Twombly, 550 U.S. at 556).

A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6). See Johnson v. Johnson, 385 F.3d 503, 529 (5th Cir. 2004). "[T]he two motions differ in when they must be filed. While a Rule 12(b)(6) motion 'must be made before pleading if a responsive pleading is allowed,' a Rule 12(c) motion for judgment on the pleadings is made 'after the pleadings are closed.'" See Fed. R. Civ. P. 12(b)-(c). Pleadings must be liberally construed, and judgment on the pleadings is appropriate only if there are no disputed issues of material

fact and only questions of law remain. See Brittan Comm. Intern. Corp. v. Southwestern Bell Telephone Co., 313 F.3d 899, 904 (5th Cir. 2002).

II. **Nelson's Motion for Partial Dismissal**

Nelson moved to dismiss only Ramsey's official capacity claims against him, arguing (1) he is not a policymaker and (2) these claims are duplicative of those against Bossier City. See Record Document 17. Ramsey's response memorandum agreed these claims were duplicative and should be dismissed. See Record Document 37. A voluntary motion to dismiss all official capacity claims against Nelson was filed and accepted by the Court on May 12, 2021. See Record Documents 43 & 45. Accordingly, Nelson's Motion for Partial Dismissal (Record Document 17) is hereby **DENIED AS MOOT**.

III. **McWilliams' Motion to Dismiss**

Identically, McWilliams moved to dismiss all claims brought against him as duplicative of the claims brought against Bossier City. See Record Document 19. Once again, Ramsey agreed to dismiss all claims against McWilliams in favor of pursuing the municipality. See Record Documents 36 & 43. The Court permitted this voluntary dismissal. See Record Document 45. McWilliams' Motion to Dismiss (Record Document 19) is also **DENIED AS MOOT**.

IV. **Police Jury's Motion to Dismiss**

The Police Jury is responsible for funding inmate medical services at the Facility. See Record Document 15 at ¶4. It believes Ramsey's allegations fail to state plausible claims for deliberate indifference because they are largely conclusory and fail to establish the necessary requirements for municipal liability under § 1983. See Record Document 21. In its motion, the Police Jury closely examines Counts III and IV of the amended

complaint, separating Ramsey's factual allegations from his conclusory statements, before pointing out the pleading's shortcomings under Monell and relevant § 1983 case law. See Record Document 21-1. Finally, the Police Jury argues Ramsey's Louisiana Constitutional claims are inapplicable. See id. Ramsey's opposition memorandum similarly details the two claims, arguing Count III outlines an unofficial policy of underfunding and understaffing the Facility, while Count IV states claims for failure to train medical staff and a lack of policies or procedures for situations requiring outsourcing of treatment. See Record Document 34. Ramsey believes these sets of allegations constitute deliberate indifference. See id. His opposition does not address the state constitutional claims.

The United States Supreme Court has held "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." Estelle v. Gamble, 429 U.S. 97, 105 (1976). The test for deliberate indifference is a subjective one, requiring that the prison official (1) was aware of facts from which an inference of excessive risk to the prisoner's health could be drawn and (2) actually drew an inference that such potential for harm existed. See Herman v. Holiday, 238 F.3d 660, 664 (5th Cir. 2001); see also Farmer v. Brennan, 511 U.S. 825, 837 (1994). Such a showing requires evidence that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Domino v. Texas Dept. of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). "Deliberate indifference is an extremely high standard to meet." Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate

indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006).

As a preliminary matter, the Court is not entirely convinced that Ramsey's complaint of receiving only over-the-counter pain medicine for his injuries constitutes deliberate indifference. The Fifth Circuit has rejected an inmate's claims of deliberate indifference where a similar course of over-the-counter treatment was provided for a more serious condition. See Brauner v. Coody, 793 F.3d 493, 499 (5th Cir. 2015). The plaintiff in Brauner, a paraplegic with a dangerous bone infection, argued he "required more than mere over-the-counter [medication] to abate his pain." Id. The court held the failure to provide stronger pain medication did not amount to deliberate indifference, but rather was a "classic example of a matter for medical judgment." Id. (citing Estelle, 429 U.S. at 107). Nevertheless, there certainly are instances "when the need for treatment is obvious, [and] medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." Davies v. LeBlanc, 2020 WL 3832594 at *8 (E.D. La. July 8, 2020) (quoting Farmer v. Brennan, 511 U.S. 825 (1994)).

Whether the medical staff's offer of only Tylenol for Ramsey's injuries is a cognizable deliberate indifference claim is a difficult question for the Court to answer at the 12(b)(6) stage, particularly in light of alleged additional statements instructing Ramsey to wait until his discharge for better treatment. Rather than draw an inference against Ramsey regarding the severity of his pain at the pleading stage, the Court will proceed to evaluate whether Ramsey has sufficiently pled a case in which municipal liability could attach.

### A. Inadequate Funding and Staffing

The core of Count III against the Police Jury alleges "there was an unofficial policy or custom… to underfund and understaff the facility" resulting in deliberate indifference. Record Document 15 at ¶¶33, 36. To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right. See Piotrowksi v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001). While official policies typically exist in the form of written policy statements, ordinances, or regulations, they may also arise in the form of widespread practices that are "so common and well-settled as to constitute a custom that fairly represents municipal policy." Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir. 1984). Consequently, a single incident is usually insufficient to demonstrate deliberate indifference. See Estate of Davis ex rel. McCully v. City of North Richland Hills, 406 F.3d 375, 382 (5th Cir. 2005); see also Burge v. St. Tammany Parish, 336 F.3d 363, 370 (5th Cir. 2003).

Ramsey seeks to connect the implementation of a Tylenol-only treatment plan to an unofficial policy of understaffing and underfunding medical care for inmates. See Record Document 34 at 3-5. However, he offers nothing more in support of this unsubstantiated claim. Ramsey makes no allegations regarding the size of the medical staff, the employees' qualifications, or the funding the Facility receives. Moreover, Ramsey fails to allege other similar instances at the Facility that could suggest an unwritten policy such as that which he baldly asserts is present. Without such support, Ramsey's claims of an "unofficial policy" evidenced by one singular incident are entirely conclusory and cannot withstand a motion to dismiss.

### B. Failure to Train and Refer to Outside Facilities

Count IV's central allegations against the Police Jury are "failure to properly train the staff of the medical unit to assess inmates for… injuries received prior to entry into the facility" and "failure to properly enact employee policies and procedures to ensure that inmates such as Ramsey are promptly referred to outside facilities for appropriate medical treatment if appropriate care cannot be provided at the facility." Record Document 15 at ¶¶43, 45. "A municipality's failure to train its police officers can without question give rise to § 1983 liability." World Wide St. Preachers Fellowship v. Town of Columbia, 591 F.3d 747, 756 (5th Cir. 2009). To state a cognizable failure-to-train claim, a plaintiff must plead facts plausibly demonstrating (1) the municipality's training procedures were inadequate, (2) the municipality was deliberately indifferent in adopting its training policies, and (3) the inadequate training policy directly caused the violation in question. See Anokwuru v. City of Houston, 990 F.3d 956, 965 (5th Cir. 2021). Notably, "in order for liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective." Id. (citing Roberts v. City of Shreveport, 397 F.3d 287, 293 (5th Cir. 2005)).

Again, Ramsey's allegations fall short of stating a plausible claim for relief. Ramsey attempts once more to link a singular statement from an unnamed medical staff member—that he could seek better care upon discharge—to overarching training and policy failures that jeopardize the health and safety of all inmates at the Facility. See Record Document 34 at 6. This lone statement, without any supporting details regarding training, outsourcing care, or similar incidents within the Facility cannot survive dismissal.

### C. Louisiana Constitutional Claims

Ramsey's amended complaint references "Articles 2, 13, and 25 of the Louisiana Constitution" in conjunction with Count IV's claims against the Police Jury. Record Document 15 at ¶¶47, 59. The Police Jury has interpreted this phraseology as §§ 2, 13, and 25 within Article I of the Louisiana Constitution.[2] Article I § 2 mirrors the Fifth Amendment's Due Process Clause; § 13 details the rights of the accused; and § 25 outlines the rights of victims of crime. See La. Const. Art. I. The Police Jury argues these portions of the Louisiana Constitution have no application whatsoever to Ramsey's allegations. See Record Document 21-1 at 20. As previously noted, Ramsey did not respond to this argument in his opposition.

The Court agrees the cited provisions of the Louisiana Constitution bear no relation to Ramsey's asserted claims of deliberate indifference. The Eight Amendment provides the source of rights from which deliberate indifference claims arise. See Estelle, 429 U.S. at 106. None of these three sections of Article I address the protections contemplated by the Eight Amendment.

Ramsey's allegations against the Police Jury fall short of stating a plausible claim for deliberate indifference and a § 1983 violation. Accordingly, the Police Jury's Motion to Dismiss (Record Document 21) is hereby **GRANTED**.

### V.    Bossier Sheriff's Office Defendants' Motion to Dismiss

The Bossier Sheriff's Office Defendants—Boyer, Whittington, and Porter—have jointly filed a Motion to Dismiss. See Record Document 28. Boyer was voluntarily dismissed from the lawsuit on May 12, 2021. See Record Document 43. All official

---

[2] Given that Articles II and XIII of the Louisiana Constitution address distribution of powers and amendments, while there is no Article XXV, this is the only logical interpretation of Ramsey's claims.

capacity claims against Porter were also dismissed. See id. Thus, Ramsey's remaining claims against this group of Defendants are for (1) deliberate indifference and retaliation against Whittington in his official capacity, (2) deliberate indifference and retaliation against Porter in his individual capacity, and (3) violations of the Louisiana Constitution. The arguments made by the Bossier Sheriff's Office Defendants closely resemble those made by the Police Jury, arguing Ramsey's allegations fall short of Rule 12(b)(6)'s plausibility standard. See Record Document 28-1. Ramsey's opposition again goes claim-by-claim in an effort to prove viability. See Record Document 38.

### A. Whittington

As the Sheriff of Bossier Parish, Whittington is the official responsible for operating the Facility through implementation of policies and procedures. See Record Document 15 at ¶5. Count III of Ramsey's amended complaint charges him with overseeing several unwritten policies that are deliberately indifferent to inmates. See id. at ¶¶27-41. The allegations center on policies of (1) denying or delaying medical treatment due to underfunding and understaffing, (2) limiting narcotic pain medication within the Facility, and (3) retaliating against inmates that complain about their medical treatment. See id. at ¶¶33-35.

Again, Ramsey has pleaded no specific facts supporting these allegations. He has pointed only to his own experience within the Facility and fails to connect his singular instance to a larger scheme of deprivation of constitutional rights. The Fifth Circuit has routinely held that conclusory descriptions of policies or customs that allegedly violate inmate rights cannot survive Rule 12(b)(6). See Doe v. Harris County, Texas, 751 Fed. App'x 545, 550 (5th Cir. 2018) ("The simple allegation that a 'policy or custom' existed,

without reference to a specific policy or custom, is precisely the sort of formulaic pleading that does not pass muster under *Iqbal*"); Spiller v. City of Texas City, Police Dept., 130 F.3d 162, 167 (5th Cir. 1997) ("The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts); see also Fridge v. City of Marksville, 2019 WL 1923445 at *5 (W.D. La. April 8, 2019). Ramsey has presented a similarly bare complaint, devoid of the necessary allegations to survive dismissal.

### B. Porter

Count V of Ramsey's amended complaint alleges deliberate indifference by Porter while Ramsey was incarcerated. See Record Document 15 at ¶¶48-53. Ramsey states that Porter and other unknown deputies ignored his requests for medical care at sick call and failed to relay these requests to the proper medical personnel. See id. Porter argues these allegations must be dismissed because they lack factual specificity. See Record Document 28-1 at 18.

Ramsey's individual capacity claim for deliberate indifference against Porter does not suffer from the same fatal deficiencies as his municipal and official capacity claims. While the failure to point to any specific procedures, customs, or similar instances precluded a favorable outcome against these Defendants, Ramsey's allegations against Porter at the personal level do not require these items be pled. Count V states Porter ignored Ramsey's pleas for additional medical care and did not pass along his requests to the medical staff. See Record Document 15 at ¶¶48-53. Deliberate indifference may be present when prison officials refuse to treat inmates, ignore their complaints, or

disregard their serious medical needs. See Domino, 239 F.3d at 756. Ramsey has alleged Porter engaged in this type of conduct, and at this stage, the claim must proceed.

Count VI alleges Porter retaliated against Ramsey for seeking medical treatment. See id. at ¶¶54-56. "To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." Morris v. Powell, 449 F.3d 682, 684 (5th Cir. 2006) (citing McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998)). Ramsey has pled sufficient factual allegations to state a plausible claim for retaliation. He alleges his initial complaints were rejected, forcing him to turn to administrative remedies for his desired medical care. See Record Document 15 at ¶53. He argues Porter then removed him from his job, offering to restore his position only if he would drop his formal requests. See id. at ¶¶54-55 When Ramsey refused, Porter caused his termination. See id. at ¶55. This is the most detailed claim in Ramsey's amended complaint and must survive the 12(b)(6) motion to dismiss.

### C. Louisiana Constitutional Claims

The Bossier Sheriff's Office Defendants echo the arguments raised by the Police Jury with respect to Ramsey's Louisiana Constitutional claims, and again, Ramsey provided no response. See Record Document 28-1 at 20. Accordingly, the Court adopts its previous reasoning and decision to dismiss these claims.

The Bossier Sheriff's Office Defendants' Motion to Dismiss (Record Document 28) is hereby **GRANTED** with respect to all of Ramsey's Louisiana Constitutional claims and those against Whittington, but is **DENIED** for those claims against Porter in his individual capacity for deliberate indifference and retaliation.

### VI. Bossier City's Motion for Judgment on the Pleadings

Bossier City reiterates many of the same arguments made by its co-Defendants. See Record Document 30. Specifically, Bossier City argues the amended complaint's lack of particular factual allegations regarding deliberately indifferent policies and training of officers precludes a finding of municipal liability under § 1983 and mandates dismissal. See Record Document 30-1. Ramsey counters with a detailed discussion of the plausibility standard, a restatement of his allegations against Bossier City, and citation to news articles and a 2016 lawsuit involving Bossier City Police Department's use of K-9 dogs. See Record Document 35.

As the Court has stated above, Ramsey's amended complaint falls short of what is required to hold a municipality liable. His allegations of policies and training are entirely conclusory in nature and are not accompanied by any admissible factual support. In its motion, Bossier City succinctly and accurately describes the state of Ramsey's amended complaint:

> At best, Plaintiff has merely established one instance of rights violations—his own—as described in the Amended Complaint. However, the Fifth Circuit has consistently held that single instances cannot support a finding of a policy or custom necessary for *Monell* claims. Thus, Plaintiff's reliance on *his* case to establish custom is inadequate.

Record Document 30-1 at 4-5 (internal citations omitted) (emphasis in original). Similar to Ramsey's claims against the Police Jury, dismissal is required, and the instant motion is hereby **GRANTED**.

### CONCLUSION

Ramsey's amended complaint fails to state plausible claims for relief against Whittington as policymaker for the Facility and the two municipal entities—the Police Jury

and Bossier City. Accordingly, all claims against these three Defendants are hereby **DISMISSED WITH PREJUDICE**. Factoring in Ramsey's voluntary dismissals, the only remaining claims in this lawsuit are those against Nelson in his individual capacity, which he did not move to dismiss, and against Porter also in his individual capacity. An order detailing the terms of this memorandum ruling and the disposition of each of the five pending motions in this matter shall issue herewith.

      **THUS DONE AND SIGNED** in Shreveport, Louisiana on this 20th day of July, 2021.

                                                      S. MAURICE HICKS, JR., CHIEF JUDGE
                                                      UNITED STATES DISTRICT COURT