UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| AARON RAMSEY | CIVIL ACTION NO. 20-1608 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| BOSSIER CITY, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment (Record Document 61) filed by Defendant Corporal Jeremy Nelson ("Nelson"). Nelson seeks summary judgment as to the remaining claims against him in his individual capacity under Section 1983 and Louisiana law filed by Plaintiff Aaron Ramsey ("Ramsey"). Ramsey opposed the Motion. See Record Document 66. Nelson replied to Ramsey's Opposition. See Record Document 67. For the reasons set forth below, the Motion for Summary Judgment is **GRANTED**.

**FACTUAL AND PROCEDURAL BACKGROUND**

This suit arises out of the apprehension and subsequent arrest of Ramsey by Bossier City police officers after a suspected burglary. See Record Document 61-2 at 1. On December 9, 2019, at approximately 10:10 p.m., Nelson responded to a call concerning an audible alarm at Davis Clothing & Outdoor, a store in Bossier City. See id. Nelson used a police canine, called Spike, to assist in the search of the store's property and surrounding areas upon arrival. See id. During the search, Nelson observed a suspect, who he later identified as Ramsey, inside a gated area. See id. After warning Ramsey that Nelson would deploy Spike, Ramsey fled rather than stopping and complying. See id. Nelson deployed Spike, and Spike eventually apprehended Ramsey

1

behind a nearby business. See id. When Nelson caught up with Spike and Ramsey, Nelson observed Ramsey apparently attempting to fight off Spike. See id. Ramsey alleges that he verbally and physically surrendered at this point, as Spike continued the bite-and-hold technique. See Record Document 15 at 4. Spike released Ramsey when Nelson gave the verbal command, and another officer handcuffed Ramsey. See Record Document 61-2 at 2. Nelson estimates that Spike held Ramsey for a total of approximately thirty seconds before Nelson called Spike off. See id. Subsequently, on January 29, 2020, Ramsey was charged with simple burglary. See Record Document 61-1 at 6. In March of 2021, Ramsey pled guilty to three counts of simple burglary and was sentenced to a total term of ten years imprisonment. See id.

On December 9, 2020, Ramsey filed the instant suit, naming as Defendants the City of Bossier City, Bossier City Police Chief McWilliams, and Nelson, among others, alleging violations of his constitutional rights under 42 U.S.C. § 1983 and Articles 2, 13, and 25 of the Louisiana Constitution. See id. at 7; Record Document 15 at 6. After several motions to dismiss were filed and considered, the only remaining claims are: (1) against Nelson, in his individual capacity, for the use of excessive force during the apprehension and arrest of Ramsey; and (2) against Lieutenant Porter, an officer at Bossier Parish Maximum Security Facility, in his individual capacity, for deliberate indifference to Ramsey's medical needs.

In the present Motion for Summary Judgment, Nelson argues: (1) Ramsey's Section 1983 claim fails under both prongs of the qualified immunity analysis; and (2) Ramsey cannot maintain any state-law claims against Nelson. See Record Document 61-1 at 9, 20. Specifically, Nelson argues that there was no actual constitutional right violation

because Nelson's actions were objectively reasonable under the circumstances, Ramsey cannot prove a discrete injury from the alleged violation, and no right was "clearly established" at the time of the alleged violation. See id. at 9, 14, 18. In response, Ramsey argues that there is a genuine issue of material fact concerning "whether Corporal Nelson applied pressure to his dog's jaws to increase the amount of force of the dog's bite when the dog was biting Ramsey's leg and whether he allowed or encouraged his dog to continue to bite Ramsey after Ramsey had surrendered and been subdued." See Record Document 66 at 2. In his reply, Nelson argues that the evidence used by Ramsey in the opposition—a "Declaration" and several photographs—are inadmissible and cannot be used to create a genuine issue of material fact. See Record Document 67 at 1.

## LAW AND ANALYSIS

### I. Summary Judgment Standard

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there

3

is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). Further, "the evidence proffered by the plaintiff to satisfy his burden of proof must be competent and admissible at trial." Bellard v. Gautreaux, 675 F.3d 454, 460 (5th Cir. 2012).

## II. Analysis

In response to Ramsey's Section 1983 claim that Nelson used excessive force on December 9, 2019, Nelson asserted the defense of qualified immunity. See Record Document 61-1 at 8. "The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Mullenix v. Luna, 577 U.S. 7, 11, 136 S. Ct. 305 (2015) (quoting Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808 (2009)). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" Id. at 12 (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092 (1986)).

Further, "[t]he Fifth Circuit does not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs." Salas v. Carpenter, 980 F.2d 299, 306 (5th Cir. 1992). Thus, the burden is on Ramsey to overcome the qualified immunity defense. To do so, Ramsey must demonstrate: (1) "a violation of an actual constitutional right"; and (2) that "the right was clearly established at the time of the violation." See Cooper v. Brown, 844 F.3d 517, 522 (5th Cir. 2016). In his Motion for Summary Judgment, Nelson asserts that Ramsey cannot

4

demonstrate a genuine issue of material fact exists as to either of these elements. This Court agrees and finds that summary judgment is appropriate as to Ramsey's Section 1983 claim against Nelson.

As an initial consideration, Nelson argues that Ramsey lacks any competent evidence to support his assertion that a genuine issue of material fact exists. See Record Document 61-1 at 12. To controvert Nelson's summary judgment evidence, Ramsey attached a "Declaration" and several photographs to his opposition to the motion. See Record Document 66-2, 66-3. As noted above, only "competent and admissible" evidence can create a genuine issue of material fact. See Bellard, 675 F.3d at 460. This Court agrees with Nelson that both of Ramsey's exhibits are inadmissible and cannot create a genuine issue of material fact.

First, the "Declaration" fails to meet the formal requirements laid out in 28 U.S.C. § 1746(1) because it "does not certify, verify, or state that the information contained therein is 'true and correct.'" See Record Document 67 at 2. Further, Nelson correctly points out that key statements in the "Declaration" concern events about which Ramsey lacks personal knowledge. See id.; Fed. R. Civ. P. 56(c)(4). For example, Ramsey states that Nelson "encouraged" Spike to bite Ramsey and that this happened after Nelson "determined" Ramsey was no longer a threat. See id.; Record Document 66-2. Both of these statements are speculative, as they speak to information only Nelson himself knows. Thus, the "Declaration" does not constitute competent summary judgment evidence. Further, the photographs attached to Ramsey's opposition cannot serve as competent summary judgment evidence because they were not properly authenticated. See Record Document 66-2, 66-3; Haskins Trucking Inc. v. Goodyear Tire & Rubber Co.,

No. CIV.A. 07-0585, 2008 WL 1775272, at *2 (W.D. La. Apr. 17, 2008) (striking photographs where no affidavit or sworn declaration properly authenticated them as required by Rule 56(c) and (e)). Thus, both the photographs and the "Declaration" will not be considered in analyzing the Motion for Summary Judgment.

### A. No violation of a constitutional right occurred

Ramsey argues that Nelson used excessive force in violation of Ramsey's Fourth Amendment rights. See Record Document 15 at 6. "To prevail on an excessive-force claim, [Ramsey] must show '(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" Cooper, 844 F.3d at 522 (quoting Elizondo v. Green, 671 F.3d 506, 510 (5th Cir. 2012)). "Excessive force claims are necessarily fact-intensive." Deville v. Marcantel, 567 F.3d 156, 167 (5th Cir. 2009). Factors to consider in determining whether the force is excessive or unreasonable include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." See Graham v. Connor, 490 U.S. 386, 396, 109 S. Ct. 1865 (1989). Additionally, reasonableness of the use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id.

Nelson asserts, and this Court agrees, that Nelson's actions were not "clearly unreasonable" under the circumstances. The Fifth Circuit's opinion in Escobar v. Montee is instructive here. See 895 F.3d 387 (5th Cir. 2018). In Escobar, Israel Escobar fled police after assaulting his wife. See id. at 390. Police were informed that Escobar had a knife and that "he would not go without a fight." See id. Thus, police deployed a canine,

6

Bullet, to aid in apprehending Escobar. See id. Bullet caught Escobar and bit him until Escobar "was fully subdued and in handcuffs." See id. at 391. Although Escobar claims he "remained on the ground in an attempt to convey his surrender," and thus it was unreasonable for the police officers to allow Bullet to continue biting Escobar, the Fifth Circuit held that the use of force was not objectively unreasonable. See id. at 391, 394. The court weighed the Graham factors to reach this conclusion: (1) the severity of the offense—felony assault—favored the police officer; (2) Escobar posed a threat, even though he was no longer armed and not resisting arrest, because it was a nighttime chase, Escobar had hidden and fled from police, and a weapon remained within Escobar's reach; and (3) Escobar clearly attempted to flee, and might have done so again once released by the dog. See id. at 394–96. Thus, the court found that the police officer did not violate Escobar's Fourth Amendment rights. See id. at 396.

Here, the Graham factors similarly weigh in Nelson's favor. First, burglary, the crime being investigated at the time of Ramsey's apprehension, "is a serious crime." See Tennessee v. Garner, 471 U.S. 1, 21, 105 S. Ct. 1694 (1985). Thus, the first factor favors Nelson. Second, it was reasonable for Nelson to believe that Ramsey posed a threat to himself and other officers. As in Escobar, Ramsey fled from the police, and the chase occurred at nighttime, where Nelson needed a flashlight to see. See Record Document 61-1 at 11. Additionally, Nelson believed that Ramsey might be armed, because the Davis Clothing & Outdoor store that was the subject of the burglary sold firearms. See Record Document 61-7 at 2 (Ex. 3 Declaration of Corporal Jeremy Nelson). Even further, Nelson estimates that, from the time he reached Spike and Ramsey, Spike continued the bite for only twenty seconds while Nelson secured the area. See id. at 4. Thus, the second factor

7

also favors Nelson. Finally, the third factor favors Nelson because Ramsey had already attempted to flee from police, and it was reasonable for Nelson to believe Ramsey may have attempted to flee again once released from Spike's hold. Thus, upon balance, the totality of the circumstances demonstrate that Nelson's actions were not objectively unreasonable. Thus, there was no constitutional right violation that can support liability under Section 1983, and Nelson is entitled to judgment as a matter of law.

Ramsey appears to argue that the exacerbation of the canine apprehension by Nelson, rather than the initial deployment of Spike, constituted use of excessive force. See Record Document 61, Ex. 1 (Response to Interrogatory No. 12). However, as Nelson points out, Ramsey cannot show any injury that resulted directly from clearly excessive force, if such excessive force even existed. See Record Document 61-1 at 14. While Ramsey can show that he sustained bite wounds from Spike, Ramsey has not shown how the alleged worsening of the bite by Nelson led to any additional or distinguishable injury. See, e.g., Guidry v. Georgia Gulf Lake Charles, LLC, 08-CV-3000, 2011 WL 2200814, at *2 (W.D. La. Apr. 21, 2011), report and recommendation adopted, 2:08-CV-3000, 2011 WL 2214161 (W.D. La. June 7, 2011) (granting summary judgment where plaintiffs failed to present evidence of injuries complained of). This Court agrees with Nelson that Ramsey has failed to produce evidence of the discrete injury complained of, and thus summary judgment is proper.

As demonstrated above, Ramsey cannot show a constitutional right violation, and thus, the qualified immunity analysis may end here. See Ahart v. Mouton, 6:13-CV-02787, 2015 WL 4459958, at *7 (W.D. La. July 20, 2015)("[T]here is no evidence [ . . .] that excessive force was used. Consequently, there is no evidence of a constitutional

violation. Accordingly, Deputy Marshal Angelle is entitled to qualified immunity with regard to the excessive force claim."). Out of an abundance of caution, however, this Court will analyze the second prong of the qualified immunity defense below.

### B. No clearly established right existed at the time of the alleged violation

Even if Ramsey successfully demonstrated a violation of his Fourth Amendment rights, Ramsey cannot prove that the right at issue was clearly established at the time of the violation, as required under the qualified immunity analysis. See Cooper, 844 F.3d at 522. The burden on this second prong of the qualified immunity analysis is "heavy: A right is clearly established only if relevant precedent 'ha[s] placed the…constitutional question beyond debate.'" Morrow v. Meachum, 917 F.3d 870, 874 (5th Cir. 2019) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741, 131 S. Ct. 2074 (2011)). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." Tarver v. City of Edna, 410 F.3d 745, 750 (5th Cir. 2005). Additionally, the constitutional question must be framed "with specificity and granularity," not at a "high level of generality." See Morrow, 917 F.3d at 875. This means the "particular conduct" at issue must be established as violative of the party's rights. See Ashcroft, 563 U.S. at 742.

Nelson points to Shumpert v. City of Tupelo, 905 F.3d 310 (5th Cir. 2018), as controlling precedent in the Fifth Circuit on the particular fact scenario at issue here. See Record Document 61-1 at 19. In Shumpert, the Fifth Circuit affirmed summary judgment in the defendant-officer's favor on qualified immunity grounds where the officer used a canine to apprehend a suspect in a narcotics investigation. See 905 F.3d at 315. The court noted that no Supreme Court precedent currently exists on this specific use of "K9

9

force" as it relates to qualified immunity. See id. at 321. Further, the only related Fifth Circuit precedent is Cooper v. Brown, *supra*, in which the court held that the specific use of "K9 force" was clearly excessive and unreasonable under the circumstances. See id. at 322. However, the Shumpert court distinguished the facts in Cooper for several reasons: (1) the officer in Cooper had no basis to conclude Cooper could be a threat to himself or others; (2) Cooper did not resist arrest or attempt to flee again; and (3) the officer knew Cooper was not armed. See id. In contrast, Shumpert was actively resisting arrest, and the officer did not know if Shumpert was armed. See id. at 323. Thus, the Shumpert court held that, "[w]hile caselaw establishes that it is unreasonable to use force after a suspect is subdued or demonstrates compliance," continued use of force until the suspect is subdued is not clearly unreasonable. See id.

This Court finds the facts at hand more analogous to Shumpert, not Cooper, such that Nelson's actions cannot be seen to have violated clearly established law. A key difference between the present facts and those in Cooper is the amount of time that the canine held onto the suspect. In Cooper, the canine continued biting Cooper for two minutes, during which time Cooper did not resist or attempt to flee. See Cooper, 844 F.3d at 521. In contrast, here, Nelson estimates, and Ramsey did not contest, that Spike held Ramsey for a total of thirty seconds. See Record Document 61-7 at 4 (Ex. 3 Declaration of Corporal Jeremy Nelson). During those thirty seconds, Nelson was only present for twenty. See id. When he approached Spike and Ramsey, Nelson gave "verbal commands" to Ramsey to "stop fighting my dog," and required assistance from another officer to illuminate the area and help place handcuffs on Ramsey. See id. Nelson stated that he used the time Spike was engaged with Ramsey "to ensure that there were no

10

additional suspects, that the suspect was not in possession of any weapons, nor that there were any weapons within his reach, and that the scene was safe and secure." See id. at 4–5.

Thus, based on these facts, Nelson did not violate a clearly established right by allowing Spike to remain engaged with Ramsey for thirty seconds while Nelson secured the area. See Woodard v. Carol, No. 2:21-CV-0059, 2022 WL 4479123, at *8 (W.D. La. Sept. 26, 2022) ("A reasonable officer, confronted with a suspect who had concealed himself from view could conclude that the suspect, even after showing his hands, could still be an immediate threat to officers if the canine was released before handcuffing."); Valencia v. Davis, 836 F. App'x 292, 298 (5th Cir. 2020) (citing Shumpert to distinguish a factual scenario where officer does not know if suspect is armed versus where officer knows suspect is not armed); Zuress v. City of Newark, OH, 815 F. App'x 1, 7 (6th Cir. 2020) (affirming summary judgment for defendant-officer where canine held arrestee for eleven seconds while officers subdued arrestee); Jarrett v. Town of Yarmouth, 331 F.3d 140, 149 (1st Cir. 2003) (finding thirty seconds a reasonable amount of time between canine engaging with suspect and officer commanding canine to release); McDaniel v. Jackson, No. 218CV01939RMGMGB, 2019 WL 7900171, at *9 (D.S.C. Sept. 27, 2019), report and recommendation adopted, No. 2:18-CV-01939-RMG, 2019 WL 6463788 (D.S.C. Dec. 2, 2019) (finding it reasonable for officer to keep canine engaged for an additional twenty seconds while suspect was handcuffed). Nelson was allowed a reasonable time to assess the situation before commanding Spike to release Ramsey, and Ramsey can produce no competent summary judgment evidence to establish that he had been completely subdued before the handcuffs were placed on him. Accordingly,

Ramsey has failed to show a clearly established law that Nelson violated in allowing thirty seconds to pass while he assessed the situation, and thus, Ramsey has failed to overcome the defense of qualified immunity. Thus, Nelson is entitled to judgment as a matter of law.

### C. Ramsey's state-law claims

Ramsey cites "Articles 2, 13, and 25 of the Louisiana Constitution of 1974" as an additional basis to hold Nelson liable for his actions on December 9, 2019. See Record Document 15 at 6. However, as Nelson points out in the Motion for Summary Judgment, these constitutional provisions are unrelated to the case at hand:

> Article 2 of the Louisiana Constitution of 1974 concerns distribution of powers among the three branches of state government—it does not enumerate individual rights or liberties. See La. Const., art. 2. Article 13 governs the procedure for revising the state's constitution; it has nothing to do with rights and freedoms. See La. Const., art. 13. There is no Article 25 of the Louisiana Constitution of 1974; there are only 14 articles in the Louisiana Constitution.

Record Document 61-1 at 20–21. Ramsey attempts to correct these constitutional provisions in his opposition to the motion by citing to Article I, Section 2 of the Louisiana Constitution instead. See Record Document 66 at 8. In his reply, Nelson argues that, even if the opposition validly amended the Complaint, Article I, Section 2 refers to due process rights; however, Ramsey has not alleged with any factual support that Nelson violated his due process rights. See Record Document 67 at 9. Further, to the extent any claims under the Louisiana Constitution mirror those under the U.S. Constitution, the state-law claims are dismissed for the same reasons.

12

## CONCLUSION

For the reasons set forth above, Nelson's Motion for Summary Judgment (Record Document 61) is **GRANTED**. All remaining claims against Nelson are **DISMISSED WITH PREJUDICE**.

An order consistent with this ruling shall issue herewith.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 3rd day of November, 2022.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT